## Case No. 4,881.

### The FLORENCE.

[13 Eng. Law T. (N. S.) 613.]

District Court, E. D. New York. 1866.

BENEDICT, District Judge. This proceeding cannot be deemed other than an act of gross misconduct on the part of the libellant. He was not an ignorant sailor, but an intelligent chief mate. He was at the time in sole charge of the vessel, and in the position of a trustee. He is presumed to know, and must, in fact, have known, that the law gave him a perfect security, for any sum justly due to him, and that the court of admiralty stands always open to adjudicate upon such demands with promptness, and in the liberal spirit of the maritime law, and he deliberately undertook to decide for himself the question between him and the master, and to compel payment of his claim as he made it, by removing and unlawfully detaining a portion of the property committed to his charge. Such an act should not be allowed to pass unnoticed in a court where violations of duty far more venial in character, when committed by seamen, are constantly punished by forfeiture of wages. But it is contended here that no wages can be declared forfeited to the owner, for the owner sustained no loss. inasmuch as the chronometer was regained by the police, and returned without expense. This defence cannot prevail according to the view which I entertain of the law applicable to such cases. I am of opinion that it is the law of the sea, as well for the quarter-deck as for the forecastle, that any unlawful appropriation of any part of the vessel. her tackle, apparel, or furniture, or of the cargo, will, in a court of admiralty, be visited with forfeiture of wages, either partial or total, according to the circumstances of the case, whether actual pecuniary loss to the owner by the act be proved or not.

I am aware that expressions can be found in books of high authority which seem to countenance the idea that forfeiture is but a compensation allowed to the owner for his loss to prevent circuity of action. I am also aware that in most of the reported cases of embezzlement, the amount of the forfeiture has been limited to a sum sufficient to compensate the owner for the loss resulting from the unlawful act. A careful examination of the cases satisfies me, however, that the view

here taken is sustained by good authority, and rests upon principles well settled. No such limit as is contended for by the libellant is suggested by Lord Tenterden in his statement of the law of forfeiture. "It seems," he says, "that neglect of duty, disobedience of orders, habitual drunkenness, or any cause which will justify a master in discharging a seaman during a voyage, will also deprive him of his wages." Abb. Shipp. pt. 4, c. 3, § 4. The language used by Chancellor Kent is: "Whatever unjustifiable conduct will warrant the act of the master in discharging a seaman during the voyage, will equally deprive the seaman of his wages." 3 Kent, Comm. p. 198. In the case of Mason v. The Blaireau, 2 Cranch [6 U. S.] 267, Chief Justice Marshall declares that forfeiture of salvage reward by embezzlement, and forfeiture of wages for embezzlement, rest upon the same ground. But it has never been supposed that the forfeiture of salvage was limited to the amount of loss sustained by the owners of the property; nor do I understand that forfeiture of salvage for this offence has been inflicted as a method of compensating the owners for the damage sustained by them in the loss of their property. The distinction in the law of forfeiture here involved is clearly alluded to by Lord Stowell in the case of The Baltic Merchant, Edw. Adm. p. 93, and was more distinctly announced by Judge Story in Cloutman v. Tunison [Case No. 2,907]. In the latter case, which was a case of absence without leave, the learned judge, while he finds that there was no statutory desertion, nor desertion under the maritime law, inflicts a partial forfeiture, and deems the owner entitled to withhold part of the wages due. "not merely as a compensation for the loss of the services of the second mate during the period, but something more —as a just admonition to officers having such high and responsible duties devolved upon them, and designedly departing from them." This view has been followed by the learned judge of the southern district of New York, who, in Scott v. Russell [Case No. 12,546], inflicted a partial forfeiture "by way of correction and amends," and "with a view to operate as a proper check to seamen. rather than to compensate the owner." "The forfeiture authorized by law in cases of this nature," says Judge Story, in a case of insubordination, "is not given to the owner as a mere boon, but is designed to operate primarily as a warning penalty upon seamen for misconduct." The Mentor [Id. 9,427]. It is in accordance with this view of the maritime law that forfeitures are inflicted for insolence, for petty plunder of esculents, &c.; for it cannot be supposed that in such cases the amount of pecuniary damage sustained by the owner is to be computed, and its compensation the object of the decree. Forfeiture is inflicted in these cases "for the good of the service," to adopt an expression of Judge Story in one of the cases cited. The

power to withhold part of the wages is given by the maritime law, in order the better to secure faithfulness and efficient service from an ignorant, unreliable, irresponsible class of men, and this power, when exercised in a proper case, with caution, and a due regard for the weaknesses and temptations of this unfortunate class. a court of admiralty will always sustain. If such be the reason of the law of forfeiture, and such its application by the courts, I see no reason for excluding a case like the present from its operation. It comes within the letter of the law, as declared by Lord Tenterden, Chancellor Kent, and perhaps within the more restricted language of Dr. Lushington, in the case of The Blake, 1 Lush. [1 W. Rob. Adm. 74]. The act of the libellant was one calculated to put at considerable risk a valuable article. The ship was already cleared, and might well have been detained by his action. The master was put to the trouble of obtaining the assistance of the police, so that the case might well have permitted a deduction from the wages upon the ground of compensation for a "supposed loss," as has been done in some of the adjudged cases. I prefer, however, to place my decision upon the ground that the act was one of gross misconduct in a chief officer; a method of procedure calculated, if encouraged, to put every owner at the mercy of the crews to which he is obliged to intrust his property; an offence to be classed with the offences of insubordination, insolence, theft, and the like, and like them to be visited with the maritime penalty of forfeiture. I do not, however, think it necessary, in this case, to cast upon the libellant all the expenses of this proceeding in addition to the loss of his wages, and shall, therefore, allow him a portion of his demand. His claim is for $75. I allow him $25, but it must be without costs.