ALFRED C. BEATTY, Respondent, *v.* GUGGENHEIM
EXPLORATION COMPANY et al., Appellants.

**Principal and agent — agreement that agent shall not have
or engage in business or interests adverse to those of princi-
pal — agreement by agent with third person to share profits of
transaction between that person and the employer of such
agent — when a violation of agent's contract with his princi-
pal — reversal by Appellate Division on questions of fact.**

1. An agent is held to the utmost good faith in his dealings with
his employer, and if he acts adversely to the interests of his employer
in any part of the transaction, or for his own benefit enters, directly
or indirectly, into any venture or agreement adverse to his employer's
interest, it is such a fraud upon his employer that he forfeits any
right to compensation for his services.

2. Where the Appellate Division reverses on questions of fact a
judgment entered on the decision of the trial court and designates
certain findings of fact which it reverses, and makes further findings
of fact itself, the appellant in this court is entitled to have the
court take the most favorable view of the findings considering
together those made by the Appellate Division and those of the trial
court left standing by the Appellate Division. This court is not
inclined to extend the application of the rule that the findings of the
trial court may be regarded as reversed by the Appellate Division by
implication on the ground of inconsistency.

3. Plaintiff was employed by the defendant company on a salary
to aid it in securing mining properties, and by his contract was not to
engage in any similar business without the company's written con-
sent, and there is evidence to support findings to the effect that during
the time of his employment and without the company's consent he
entered into an agreement with defendant Perry, who was also engaged
in securing mining properties for the defendant company, whereby
Perry charged the company a larger amount in securing for it certain
mining properties than he otherwise would have been willing to
accept in order to give the plaintiff part of the amount and still retain
sufficient for himself. The defendant company thereupon notified
Perry that the plaintiff's share under such agreement equitably
belonged to it. Plaintiff thereafter brought this action to recover
against Perry and the defendant company a part of Perry's compen-
sation. *Held,* that the plaintiff was guilty of such a serious breach of

his fiduciary relations with the company and of such a fraud upon his employer as forfeits any right to recover in this case.

Beatty v. *Guggenheim Exploration Co.*, 167 App. Div. 864, reversed.

(Argued March 6, 1918; decided April 23, 1918.).

APPEAL from a judgment, entered September 30, 1915, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing a judgment in favor of defendants entered upon a decision of the court on trial at Special Term and directing judgment in favor of plaintiff.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Nathan L. Miller, Louis Marshall* and *John N. Steele* for appellants. The relations of Beatty to the exploration company were highly fiduciary. The duty which he owed to his employer was that of *uberrima fides.* The latter is, therefore, entitled to any profits derived by Beatty in the course of his agency, other than those which it was expressly stipulated that he should have. (*Moore* v. *Moore,* 5 N. Y. 256; *Michond* v. *Girod,* 4 How. [U. S.] 554; *Hughes* v. *Washington,* 72 Ill. 84; *F., etc., R. Co.* v. *Dewey,* 14 Mich. 477; *Kerby* v. *Kerby,* 57 Md. 345; *Gould* v. *Gould,* 36 Barb. 270; *Rubidoex* v. *Parks,* 48 Cal. 215; *Sandoval* v. *Randolph,* 222 U. S. 161; *Wilson* v. *Wilson,* 4 Abb. Ct. App. Dec. 621; *Dutton* v. *Willner,* 52 N. Y. 312; *Ten Eyck* v. *Craig,* 62 N. Y. 406; *Murray* v. *Beard,* 102 N. Y. 505; *Moore* v. *Petty,* 135 Fed. Rep. 668; *Boston Deep Sea Fishing & Ice Co.* v. *Ansell,* L. R. 39 Ch. Div. 339.) Assuming, but most emphatically denying, that the exploration company consented that the plaintiff might realize the profits which he now seeks to recover, such consent would not entitle him to prevail, since, irrespective of the equitable objections already considered, the circumstances disclosed did not create a legal contract, which

entitled him to receive from his employer any compensation, beyond that stipulated in his contract of employment, however valuable his services may have been. (2 Parsons on Cont. 437; 1 Chitty on Cont. 60; *Bartlett v. Wyman,* 14 Johns. 260; *Conover v. Stillwell,* 34 N. J. L. 54; *Vanderbilt v. Schreyer,* 91 N. Y. 401; *Geer v. Archer,* 2 Barb. 420; *Seybolt v. N. Y., L. E. & W. R. R. Co.,* 95 N. Y. 562; *Widiman v. Brown,* 83 Mich. 241; *Arend v. Smith,* 151 N. Y. 502; *Carpenter v. Taylor,* 164 N. Y. 171; *Godley v. Crandall & Godley Co.,* 212 N. Y. 133; *Bartholomew v. Jackson,* 20 Johns. 28.) There being no consideration for the alleged approval of the officers of the exploration company that Beatty might take from it the profits which he is now attempting to reduce to possession, and he not having changed his position to his injury in reliance upon their pretended consent, the exploration company could at any time exercise its *locus pœnitentiœ,* and nullify the consent thus given. (*Godley v. Crandall & Godley Co.,* 212 N. Y. 133; 2 Pom. Eq. Juris. [3d ed.] §§ 955–959; *Le Gendre v. Byrnes,* 44 N. J. Eq. 372; *Mallory v. Mallory-Wheeler Co.,* 61 Conn. 135; *Enneau v. Rieger,* 105 Mo. 675; *Exter v. Sawyer,* 146 Mo. 302; *Dunne v. English,* L. R. 18 Eq. 324.) The exploration company, however, at no time consented in writing, or otherwise, that the plaintiff might receive for himself the profit which he is seeking to recover in this action, neither the directors nor the stockholders having ever been called upon to act on the subject and never having in fact acted thereon. (*Hay's Case,* L. R. 10 Ch. App. 593; *Emma S. M. Co. v. Lewis,* L. R. 4 C. P. D. 396; *Plaquemines, etc., Co. v. Buck,* 52 N. J. Eq. 219; 2 Cook on Corp. § 657; *Danville, etc., R. R. Co. v. Kase,* 39 Atl. Rep. 301; *Gill v. New York Cab Co.,* 48 Hun, 524; *Hall v. Vermont, etc., R. R. Co.,* 28 Vt. 401; *Henry, etc., Co. v. Schaefer,* 173 Mass. 443; *Met. El. R. R. Co. v. Kneeland,* 120

N. Y. 134; *Matter of George Newman Company,* 1 Ch. [1895] 674; *Benson* v. *Heathorn,* 1 Y. & C. Ch. 326; *Beers* v. *New York Life Ins. Co.,* 66 Hun, 75.)

*Charles F. Brown, Henry Wollman* and *Robert C. Beatty* for respondent. The defendant Guggenheim Exploration Company waived the provision in the plaintiff's contract of employment requiring him to secure its consent in writing to investments. (*Whipple* v. *Prudential Ins. Co.,* 222 N. Y. 39; *Pechner* v. *Phœnix Ins. Co.,* 65 N. Y. 195; *Weed* v. *L. & L. Ins. Co.,* 116 N. Y. 106; *Solomon* v. *Vallette,* 152 N. Y. 147; *Stewart* v. *Union Mut. Life Ins. Co.,* 155 N. Y. 257; Bishop on Cont. § 776; *Beveridge* v. *N. Y. El. R. R.,* 112 N. Y. 1; *Vanderpoel* v. *Gorman,* 140 N. Y. 563; *People ex rel. Manice* v. *Powell,* 201 N. Y. 194; *Sun P. & P. Co.* v. *Moore,* 183 U. S. 642; *Alsens A. P. C. Works* v. *Degnon Cont. Co.,* 222 N. Y. 34.) The plaintiff was legally entitled to so much of the property involved in this action as represents his share of profits in the Perry-Treadgold contract and the share of Perry's commissions which Perry allotted to him provided he had the consent of the Guggenheim Company. (*Butterfield* v. *Cowing,* 112 N. Y. 486; *Vohmann* v. *Michel,* 185 N. Y. 420; *Dobson* v. *Racey,* 8 N. Y. 216; *Boerum* v. *Schenck,* 41 N. Y. 182; *Woodbridge* v. *Bockes,* 59 App. Div. 503; *Tilleny* v. *Wolverton,* 54 Minn. 75; *United States Steel Corp.* v. *Hodge,* 64 N. J. Eq. 807; *Matter of Niles,* 113 N. Y. 547; *Glor* v. *Kelly,* 49 App. Div. 617; 166 N. Y. 589; *Hutchinson* v. *Simpson,* 92 App. Div. 382; *Kelly* v. *Newburyport Horse R. R. Co.,* 141 Mass. 496; *Prevost* v. *Gratz,* 6 Wheat. 481.) The findings of the Appellate Division that the exploration company gave its consent that the plaintiff might share with Perry in the profits of the Perry-Treadgold contract and in Perry's compensation after the plaintiff had made a full and fair disclosure

to said company of everything which he knew with reference to the Yukon property and as to his arrangements, transactions and relations with Perry and Treadgold, are decisive of this action. (*Alsens A. P. C. Works* v. *Degnon Cont. Co.,* 222 N. Y. 34.)

CUDDEBACK, J. The plaintiff in this action alleged that he and the defendant Oscar B. Perry were jointly interested in a mining enterprise on Bonanza creek, in the Yukon mining district of Alaska, and that he, the plaintiff, was entitled to certain money and property which the defendant Perry withheld, and for which the action was brought to recover. The defendant Perry made no personal claim to the money and property involved in the action, but retained it because the other defendant, the Guggenheim Exploration Company, alleged that it owned such money and property, and that the plaintiff's demand was in fraud of the company's rights and in violation of a contract between the plaintiff and the company.

It appeared that in May, 1905, one Treadgold, who owned mining property and held options on other mining property on Bonanza creek in the Yukon district, sought to sell the same to the defendant company and gave the company an option thereon.

In June, 1905, John Hays Hammond, who was the manager of the defendant company, directed the defendant Perry, a mining engineer in the employ of the company, to investigate Treadgold's offer. Perry went to the Yukon district, examined the property and advised the defendant company to take over the same. Hammond then directed the plaintiff, Beatty, to go to the Yukon and further investigate Treadgold's propositions and schemes.

The plaintiff was a mining engineer and assistant manager of the defendant company. He was engaged by the company under a contract for five years from

March 1, 1903, and by his contract the plaintiff agreed to devote himself exclusively to the business of the defendant company, and not to accept, engage in or enter upon any other business or employment whatever and not to become, either directly or indirectly, interested in or connected in any way with any business similar to that which the defendant company carried on, with certain exceptions not material here, without the written consent of the company. By the contract the company reposed great confidence in the plaintiff's integrity and the agreement was very carefully drawn to give the company the sole benefit of Beatty's unbiased judgment. Beatty was to receive a salary of $20,000 a year and in certain contingencies additional compensation.

Beatty went to the Yukon as directed by Hammond and after an investigation he strongly advised the defendant company by telegraph to purchase the Treadgold properties. But the price asked by Treadgold was too high and Hammond answered September 2, 1905, for the defendant company that the business was not attractive on the basis offered and directed Beatty not to commit the company on that basis, believing that Treadgold would come to New York where better terms could be made.

At about that time Treadgold was in trouble with his options and he applied to Perry for aid. Perry was unable to furnish the money required and he applied to the plaintiff Beatty. Beatty advanced Perry $15,000, which was expended to hold the options.

After Hammond's telegram of September 2, Perry conceived the plan to get from Treadgold certain mining claims lower down on Bonanza creek, known as claims 89–104 below discovery, and work them as a mine. These claims were not included in the Treadgold offer to the defendant company. Perry did not have the money to purchase these claims so he asked Beatty to

take a share in the enterprise. To get. these claims it was necessary to have $45,000 at once, about $115,000 May 1, 1906, and later on $150,000 for equipment. The plaintiff agreed to advance to Perry $20,000 of the $45,000 immediately required, and he also agreed to advance 35/45 of the future payments, and it was agreed that Beatty should have 35/45 of the profits accruing from the venture, and should be repaid for all the moneys advanced to Perry.

At the time of this agreement Beatty informed Perry of his contract with the defendant company, and that he had no right to take any personal interest in this scheme without the consent of the company, and it was agreed that if the company did not consent, the money advanced to Perry should be regarded as a loan and repaid by Perry to the plaintiff.

The plaintiff then returned to the United States and from there sent Perry by telegraph $20,000, and Perry made a contract with Treadgold to acquire from him claims 89–104 below discovery, with the right reserved in Treadgold within a time fixed to buy back the claims at an advanced price. This contract was in writing dated September 26, 1905, and Perry sent a copy of it to the plaintiff at Denver.

The plaintiff then went to New York to report to the defendant company on the Yukon enterprise. He gave Hammond, the company's general manager, a copy of the Perry-Treadgold contract and also informed him of the arrangement he had made with Perry for a joint interest with Perry in the contract, but he did not inform Hammond of the amount of his interest. The plaintiff also gave Daniel Guggenheim, president of the company, the same information. Both Guggenheim and Hammond assented to the arrangement that the plaintiff should be interested with Perry in the Perry-Treadgold agreement, but no written consent thereto was given as

provided by the plaintiff's contract of employment with the defendant company.

Thereafter Perry arrived in New York and Treadgold reached there about the same time. Negotiations between Treadgold and Hammond for the sale of the Yukon property were re-opened with the result that on December 5, 1905, the defendant company acquired the property in the original contract with Treadgold, and in addition thereto, claims 89–104 below discovery which were included in the Perry-Treadgold agreement. That, of course, broke up the arrangement between Perry and the plaintiff as to claims 89–104 below discovery under which the plaintiff had advanced to Perry $35,000, but before that time Perry had returned $7,700 of the sum advanced.

Hammond then took up with Perry the matter of the latter's compensation for his services in Alaska. Hammond agreed on the part of the defendant company to deliver to Perry 4% of the shares of the preferred and common stock of the company formed to take over the Treadgold properties and an option to take at cost 4% additional of such preferred and common stock, and also an option on stock in another company which is not important here.

After such compensation had been agreed upon between Perry and Hammond, but before the contract was finally made, Perry and the plaintiff, Beatty, agreed that the plaintiff should have in lieu of his interests in claims 89–104 below discovery, 1¼% out of the 4% of stock that Perry was to receive from the defendant company, and 3% out of the 4% of stock on which Perry was to have an option and 273/450 of all the profits Perry should make out of the Perry-Treadgold contract.

Perry received from the defendant company all the stock and other property that he was to get under the contract as his compensation. This action is brought by the plaintiff to recover from Perry the plaintiff's share

of such compensation according to their agreement. Perry was willing to accede to the plaintiff's demand but for the objections raised by the defendant company.

These conflicting claims of the plaintiff and the defendant company present the issues in the case. There can be no doubt that the plaintiff's agreement with Perry was a contract to engage in a business similar to that carried on by the defendants, and was in violation of his contract of employment, and, furthermore, that the plaintiff had no written consent from the defendant company to engage in such business. The plaintiff's answer to this objection is that the defendant company knew of and assented to his agreement with Perry and thereby waived the provision that he should not make such a contract without the company's written consent.

I pass this question of waiver because I think there is another ground of objection which is fatal to the plaintiff's recovery. That objection relates to the second agreement made by the plaintiff with Perry, whereby the plaintiff was to have a share in the compensation which Perry was to receive from the defendant company.

The 38th finding of fact made by the Special Term is that Perry would have been satisfied to receive from the defendant company a much smaller compensation for his services with regard to the Treadgold properties but for the fact that the plaintiff, Beatty, was to participate in that compensation, and that it was agreed between Perry and Beatty that Perry was to ask for a larger compensation than he would otherwise have been willing to accept in order to give the plaintiff part of the amount and still retain sufficient for himself; and the finding is further that Perry did increase his demand accordingly. If this finding has support in the evidence it shows that Beatty was guilty of a very serious breach of his fiduciary relations with the defendant company which ought to prevent his recovery in this case.

The respondent urges that this 38th finding of fact is inconsistent with the other findings of fact made by the Appellate Division in rendering its judgment of reversal, and that it should be held that this finding is reversed for such inconsistency. Section 1338 of the Code of Civil Procedure provides that when the Appellate Division reverses a determination of the trial court on questions of fact, it shall specify the particular questions of fact reversed " by number or other adequate designation." In the present case the Appellate Division did indicate by number upwards of thirty findings of fact made by the trial court which it reversed. We would be hardly justified in saying that the court reversed another finding of fact by implication as being inconsistent with the findings which it did make. This court has said that it is not inclined to extend the application of the principle that the findings of the trial court may be regarded as reversed by the Appellate Division on the ground of inconsistency. (*Levy* v. *Louvre Realty Co.,* 222 N. Y. 14; *Appleton* v. *City of New York,* 219 N. Y. 150.)

The 38th finding of fact, if supported by the evidence, must be regarded as in full force and the appellants are entitled to have the court take the view most favorable to it of the findings with No. 38 included.

It is, therefore, necessary to consider whether the finding has any support in the evidence. It is undoubtedly true that Perry did make his demand on the defendant company for compensation at a larger amount than he would otherwise have been satisfied to take, because he expected to turn some part of his compensation over to Beatty. It is also true that Perry talked over the matter of the compensation he should receive from the defendant company with the plaintiff before the same was fixed, and when Perry made his agreement with Hammond as to the amount of his compensation he

informed the plaintiff thereof before closing with Hammond. Perry says that Beatty suggested 3% of stock for him and the witness, and 1% or 2% for himself. As to the option stock, Beatty suggested making the amount the same as the other and said that he would take care of what the witness did not want. Beatty desired that this arrangement should be confidential between him and Perry, to which Perry consented.

This is a very brief resumé of Perry's testimony, but it shows beyond cavil an arrangement between Beatty and Perry to increase Perry's demand for compensation, and divide the compensation with the plaintiff. Perry's testimony, to say the very least, is some evidence to sustain the 38th finding of fact, and that is all that is necessary here.

The rule of law which condemns such conduct by an agent is elementary and does not need any extended citation of authorities to sustain it. An agent is held to the utmost good faith in his dealings with his principal; if he acts adversely to his employer in any part of the transaction or omits to disclose any interest which would naturally influence his employer's conduct in dealing with the subject of employment, it is such a fraud upon his employer as forfeits any right to compensation for his services. (*Murray* v. *Beard,* 102 N. Y. 505; Meachem of Agency, § 469.) Under his contract of employment by the plaintiff, Beatty received a large annual compensation for his services. If he succeeds in this action he will recover some hundreds of thousands of dollars additional which comes directly from his employer's treasury. It is a result which should be condemned. This is said without prejudice to any right Beatty may have to recover a part of Perry's profits under the contract with Treadgold for the repurchase of the claims 89–104 below discovery.

The appellants present some other points in their favor,

but in view of the conclusion reached it is not necessary to consider them.

The judgment should be reversed and a new trial granted, with costs to abide the event.

CRANE, J. (dissenting). I cannot agree with the prevailing opinion regarding the thirty-eighth finding of fact for three reasons: *First,* it is clearly reversed by the new findings of fact made by the Appellate Division. *Second,* it has no evidence to support it. *Third,* conceding the statements therein contained to be true, they in no way prevent a recovery in this case as the defendants well knew that Beatty was to share in the commission.

I am of the opinion that the judgment in this case should be affirmed, with a deduction of those damages given by the Appellate Division for alleged bad faith; that is, the judgment should be modified by deducting $174,485, arising out of defendants' notice to Perry not to deliver the stocks to Beatty, and as so modified affirmed.

In the first place, there is no evidence in this case of bad faith, or to be more accurate in the use of legal terminology, of actual malice; and in the second place, it is still an open question in this state whether damages can be recovered from one who procures another to break a contract.

Cases like *Ashley* v. *Dixon* (48 N. Y. 430); *Daly* v. *Cornwell* (34 App. Div. 27); *Roseneau* v. *Empire C. Co.* (131 App. Div. 429); *De Jong* v. *Behrman Co.* (148 App. Div. 37), and *Mahler Co.* v. *Mahler* (160 App. Div. 548) are to the effect that damages cannot be recovered, irrespective of motive. On the other hand, I believe the weight of authority is to the effect that where actual malice moves one to procure another to break his contract with a third party, an action will lie for the malicious wrong. (*Angle* v. *Chicago, St. P., M. & O. Ry. Co.,* 151 U. S. 1, 13; *Bitterman* v. *Louisville & N. R. R. Co.,* 207

U. S. 205, 222, 223; *Dr. Miles Med. Co.* v. *Park & Sons Co.*, 220 U. S. 373, 395; *Hitchman Coal & Coke Co.* v. *Mitchell*, 245 U. S. 229, 252; *Lumley* v. *Gye*, 2 El. & Bl. 216; *Bowen* v. *Hall*, 6 Q. B. D. 333; *Walker* v. *Cronin*, 107 Mass. 555; *Moran* v. *Dunphy*, 177 Mass. 485; *Thacker Coal Co.* v. *Burke*, 59 W. Va. 253; *London Guarantee Co.* v. *Horn*, 206 Ill. 493; *Twitchell* v. *Nelson*, 155 N. W. Rep. [Minn.] 621; *Knickerbocker Ice Co.* v. *Gardiner Dairy Co.*, 107 Md. 556, and the matter fully reviewed in 18 Harvard Law Review, 411.)

Some of these authorities are to the effect that an action will lie for an unwarranted interference with a contract between others though there be no malice, but the New York rule is, and must be, I think, reconciled with these leading authorities by permitting a recovery where actual malice has instigated such interference.

There is no proof of actual malice in this case.

There is, however, ample proof that the defendant knew all about Beatty's contracts, authorized them, approved of them, and was anxious and willing that he should profit by them, and his continuance in its employ is inconsistent with any other attitude toward him and his business relations. How business men of the force and ability of those composing the defendant could know all the details of these arrangements and know that Beatty was to profit out of Perry's commissions, and yet claim to have been deceived because they did not know the exact extent of that profit is beyond my comprehension.

The judgment should be modified and as modified affirmed.

HISCOCK, Ch. J., COLLIN and HOGAN, JJ., concur with CUDDEBACK, J., and CHASE, J., concurs in result; CRANE, J., reads dissenting opinion; McLAUGHLIN, J., not sitting.

Judgment reversed, etc.