## HANSEN v. BARNARD.

(Circuit Court of Appeals, Second Circuit. December 15, 1920.)

No. 59.

1. **Principal and agent** &#8596;84—**Agent forfeits right to compensation by fraud on principal.**

An agent must act with entire good faith and loyalty in all his dealings affecting the subject-matter of his agency, and if he is guilty of fraud on his principal in the transaction of the agency, he is not entitled to compensation for his services.

---

&#8596;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Shipping ☞69—Rule that fraud of agent defeats right to compensation applies in maritime law.**

The rule of common-law agency, that fraud by the agent in the transaction of the agency defeats the agent's right to compensation, applies in the maritime law.

**3. Shipping ☞69—Master fraudulently injuring ship is guilty of "barratry," forfeiting compensation.**

The master of a ship, who commits in his character of master an act for an unlawful or fraudulent purpose, to the injury of the owner of the ship, is guilty of the offense of "barratry," for the commission of which the maritime law prescribes as a penalty the forfeiture of compensation.

[Ed. Note.—For other definitions, see Words and Phrases, Barratry (In Maritime Law).]

**4. Shipping ☞69—Misconduct of master does not require forfeiture of all compensation.**

Under the maritime law, a forfeiture of the whole amount of the wages due an officer or seaman does not necessarily follow in all cases of misconduct which involve a forfeiture, but the court may in some cases decree a partial forfeiture.

**5. Shipping ☞69—Entire compensation of master forfeited for fraudulent acts.**

The master of a ship, who rendered fraudulent accounts to the owner, is guilty of criminal misconduct, in breach of his duty to the owner, which works a forfeiture of his entire compensation.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by Hans Revne Hansen against William B. Barnard. Decree for libelant, and respondent appeals. Reversed, with directions to dismiss the libel.

The libelant is a master of steam vessels holding an unlimited license. On June 25, 1916, he became master of the steamer Sagamore under a contract of employment with the Mannes Fishing Company, at that time the charterer of the vessel.. The boat left New York under his command on a voyage to Iceland and Norway. The vessel, owing to stress of weather and leakage, put into Bay Bull Harbor, Newfoundland. After a short delay she again started on her voyage, but was compelled by renewed leakage to put into St. Johns, Newfoundland, on August 12, 1916. For several months she remained there and underwent repairs. On September 15, 1916, the charter of the vessel to the Mannes Fishing Company was canceled. The libelant, however, at the respondent's request, continued to act as master from September 15, 1916, to May 18, 1917.

The libelant claims that the respondent agreed to pay him for his services in the performance of his ordinary duties of master of the steamer $250 a month from that date to May 18, 1917, together with $3.00 a day for board and expense money during the entire period from September 15, 1916, to May 18, 1917, amounting in all to the sum of $2,579. He admits that he has been paid $1,200 on account, and claims that there is due him a balance of $1,379. In addition the libelant claims that between September 15, 1916, and March 15, 1917, at the special request of the respondent and his agents, he performed services in watching and pumping the vessel, which services were outside the scope of his duties as master, and were of the reasonable value of $4 per day, amounting to the further sum of $720.

The respondent, who during all the times mentioned herein has been and is the owner of the Sagamore, alleged in his answer upon information and belief that during the times mentioned in the libel the libelant presented to respondent's agents at St. Johns fraudulent and untrue bills and vouchers for labor claimed to have been employed and materials purchased by the libelant,

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and that by means of such fraudulent bills and vouchers he obtained from respondent's agents not less than $478. It is also alleged that the libelant took from the steamship various brass and metal fittings and accessories, as well as the mainmasts, booms, and other portions and parts of the vessel, and converted the same to his own use; the value not being less than $1,000.

The District Judge found that the libelant was employed at the rate of $200 a month for the entire period to May 18, 1917, declining to hold that he was to be paid $250 from January 1, 1917. He also found that he was not entitled to $3 a day for his maintenance, but allowed him at the rate of $1.50 a day, which he thought was a reasonable allowance for the kind of living which the libelant, according to his own testimony, had. The claim for $4 a day for watching and pumping was disallowed. The District Judge also found that the libelant had "padded" his accounts. He rendered bills which were on their face frauds. "Bills aggregating," said the Judge, "$260.50 are in my judgment proven to have been fraudulent. * * *" The amount of the fraudulent bills was deducted, and a decree was entered for $662.25.

Louis Boehm, of New York City (Samuel Zeiger, of New York City, of counsel), for appellant.

Foley & Martin, of New York City (George V. A. McCloskey, of New York City, of counsel), for appellee.

Before WARD, ROGERS, and MANTON, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The respondent has appealed from the decree, alleging that the District Court fell into certain errors, the most important of which is that a master is not entitled to recover his wages, if it appears that he has been guilty of fraud in the accounts which he has rendered.

The testimony in the record discloses, and the libelant himself admits, that his accounts were padded. A witness, who on cross-examination was being questioned as to the alleged frauds, said the libelant had admitted the fraud to him saying:

"Yes, it is true that some of the bills that I presented to Mr. Benedict were not correct, but everybody else does it, and why shouldn't I?"

[1] The relation of an agent to his principal is regarded as that of a fiduciary. He must act with entire good faith and loyalty in all the agent's dealings affecting the subject-matter of his agency. We understand the law to be that an agent who is guilty of fraud upon his principal in the transaction of his agency is not entitled to compensation for his services. Shaeffer v. Blair, 149 U. S. 248, 13 Sup. Ct. 856, 37 L. Ed. 721; Beatty v. Guggenheim Exploration Co., 223 N. Y. 294, 304, 119 N. E. 575; Little v. Phipps, 208 Mass. 331, 94 N. E. 260, 34 L. R. A. (N. S.) 1046. In Mechem on Agency, §§ 1588 and 1589, after stating the rule to be that the first duty of an agent is to be loyal to his trust, and to render to the principal a disinterested and loyal service, it is said that—

"Among the other measures designed to secure the performance of this duty is the denial of compensation where the duty has not been observed. It is often said that a loyal performance is a condition precedent to the right to recover compensation, and it has been held in many cases that, where the agent is unfaithful to his trust and abuses the confidence reposed in him, he will not be entitled to any compensation for his services. * * * It may often operate to give to the principal the benefit of the agent's service without any compensation, but the agent has only himself to blame if that result en-

sues. The rule rests, not upon injury to the principal, but upon the paramount policy of removing the danger of temptation from the pathway of the agent."

In Labatt's Master and Servant (2d Ed.) vol. 2, § 696, it is said:

"What breaches of duty will entail a total forfeiture of wages is a question which the cases, as they stand, can scarcely be said to have settled definitely; but there would seem to be ample warrant for assuming that a court would not permit an employee to recover if he had been guilty of willful fraud, or had performed his work so negligently or unskillfully that it was either without any value, or a source of absolute loss to his employer. The rationale of the disability under the latter of these heads is sufficiently clear. But if, as the decisions seem to indicate, fraud is to be treated as a ground of forfeiture, whatever may be the extent of the resulting injury to the employer, the absolute quality of the defense in this instance must apparently be viewed as resting upon the consideration that dishonesty should be visited with consequences of a penal nature."

And the same writer in section 698 declares that—

· "The doctrine of the maritime law would seem to be essentially the same as that adopted by the common law tribunals. * * * "

[2] We are not aware that the doctrine of the maritime law differs in this respect from that of the common law. It is essentially the same. In The Thos. Worthington, 3 Robinson's Reports, 128, which was an action by a master for wages, the English court, after stating that mere error of judgment in the management of the concerns of the vessel, unaccompanied by corrupt intention or willful disobedience of orders, would not of itself entail a forfeiture of his wages, added that, if circumtsances of fraud and collusion had been alleged, it would have decreed a forfeiture of his wages in toto.

[3] The master of a ship, who commits, in his character of master, an act for an unlawful or fraudulent purpose, to the injury of the owner of the ship, is guilty of the offense of barratry; and for the commission of such an offense the maritime law prescribes as a penalty the forfeiture of all compensation due. Kay's Law Relating to Shipmasters and Seamen, 51. In 1799 Lord Stowell said, in The Exeter, 2 C. Rob. 261, that—

"Any acts which will justify a master in discharging a seaman during the voyage will also deprive the seaman of his wages."

But in 1839 Dr. Lushington, in The Blake, 1 W. Rob., 73, 75, took exception to this statement of the rule, and stated that the wages might be forfeited—

"not in cases of discharge for mere misconduct alone, but where the misconduct has been such as to render the discharge of the seaman imperatively necessary for the safety of the ship, and the due preservation of discipline."

In The Florence, 9 Fed. Cas. 295, No. 4,881, a chief mate, having a dispute with the master about the rate of his wages, took away the ship's chronometer, not with any intention of stealing it, but intending to hold it as security for his wages. In that case Judge Benedict did not decree a total forfeiture of wages, but allowed him one-third of the amount due him. The forfeiture was not based upon the ground of compensation to the owner for any loss sustained, but upon

the theory of a warning penalty upon seamen for misconduct. Judge Benedict said:

"I prefer, however, to place my decision upon the ground that the act was one of gross misconduct in a chief officer; a method of procedure calculated, if encouraged, to put every owner at the mercy of the crews to which he is obliged to intrust his property; an offense to be classed with the offenses of insubordination, insolence, theft, and the like, and like them to be visited with the maritime penalty of forfeiture."

In Cloutman v. Tunison, 5 Fed. Cas. 1091, No. 2,907, Judge Story, in 1833, decreed a partial forfeiture of wages, because of the absence of an officer without leave, stating that he did so as a just admonition to officers having such high and responsible duties devolved upon them and designedly departing from them. He declared that desertion during a voyage worked a forfeiture of all the wages antecedently due under the maritime code of every commercial nation. To amount to desertion there must be the act of quitting the ship animo non revertendi. The case was heard in the Circuit Court on appeal from the District Court. The District Judge had inflicted the penalty of a forfeiture of one month's pay. Justice Story said:

"If this were the case of a common seaman, I should do the same. But in the case of an officer I think the good of the merchant service requires a somewhat higher forfeiture."

He therefore decreed a forfeiture of two months' pay.

[4] These cases indicate that under the maritime law a forfeiture of the whole amount of the wages due does not necessarily follow in all cases of misconduct which involve a forfeiture. In what cases there is a complete forfeiture, and in what cases there may be a partial forfeiture, we need not now decide.

[5] Whatever doubt may exist as to what kind of misconduct works a forfeiture of a seaman's wages, and as to the circumstances under which the forfeiture must be total, or may be partial, we entertain no doubt that, where the master of a ship is guilty of fraud in rendering his accounts to the owner, he is guilty of such breach of duty as works a forfeiture of wages. There is criminal misconduct and a breach of the duty of a fiduciary, and it is all the more reprehensible because done by an officer of the ship, who knows that his conduct is wrong and that he owes the highest fidelity to his principal the owner.

The decree is reversed, with directions that a decree be entered in favor of the respondent, dismissing the libel, with costs.