## HIGBEE v. AMERICAN FOREIGN STEAMSHIP CORPORATION.
### No. 433 of 1948.

United States District Court
E. D. Pennsylvania.

Dec. 28, 1950.

---

Joseph Weiner, of Freedman, Landy & Lorry, of Philadelphia, Pa., for libellant.

T. E. Byrne, Jr., of Krusen, Evans & Shaw, of Philadelphia, Pa., for respondent.

BARD, District Judge.

This is a seaman's action in admiralty to recover wages, subsistence and vacation bonus allegedly due the libellant by reason of his wrongful and improper discharge as master of the respondent's vessel, the S. S. "James Roy Wells." On the basis of the pleadings and the testimony, I make the following special

Findings of Fact.

1. The libellant is David D. Higbee, a resident of Haddonfield, New Jersey.

2. The respondent is American Foreign Steamship Corporation, a New York corporation which owns and operates the S. S. "James Roy Wells."

3. The libellant is a master mariner, having held his master's license for ocean vessels of unlimited tonnage since 1929.

4. The libellant was employed by the respondent by a letter dated July 2, 1947 assigning him to command the "James Roy Wells."

5. There was no agreement regarding the length of time the libellant was to be employed by the respondent.

6. The respondent carried a $25,000 blanket performance bond with the National Surety Corporation. This blanket performance bond automatically bonded every master that was employed by the respondent without the master having to apply for or sign the bond.

7. The libellant was so bonded.

8. After the libellant assumed command of the "James Roy Wells" in Galveston, Texas, he received a letter of instructions from the respondent to take that vessel to Bombay, India, and to Vizagapatam, India. The vessel returned to Baltimore, Maryland, on November 2, 1947.

9. While in Bombay the libellant sold gunny sacks and grain fittings from the "James Roy Wells" for 4,880 rupees.

10. The exchange rate in Bombay at that time was 3.32 rupees per $1.

11. In a letter dated November 15, 1947 the libellant reported to the respondent that

he had sold these gunny sacks and grain fittings for 2,490 rupees.

12. Thus, the libellant reported $750 as the sale price of the gunny sacks and grain fittings when he actually received $1,469.88.

13. Pursuant to a second letter of instructions, the libellant took the "James Roy Wells" from Baltimore on November 15, 1947 to Rotterdam, Holland, and returned to Philadelphia, Pennsylvania, on December 25, 1947.

14. Meanwhile, thinking that 2,490 rupees ($750) was a very low sale price for gunny sacks and grain fittings worth over $8,000 when new, the respondent started an investigation.

15. On December 26, 1947 the libellant received a third letter of instructions, dated December 19, 1947, to prepare the "James Roy Wells" for a voyage and to take it to Italy.

16. Whereupon, the libellant hired a crew and prepared the vessel for sea.

17. Sometime in December 1947, probably after December 19, the respondent learned that the libellant had sold the gunny sacks and grain fittings for 4,880 rupees ($1,469.88).

18. Thereafter, the respondent received the original receipts for 4,880 rupees which were signed by the libellant.

19. On January 7, 1948, before the "James Roy Wells" had loaded its cargo or had left the Philadelphia area, the libellant was informed that he was immediately relieved of his command by Captain D. J. Welch, who held a seniority basis to the libellant on the respondent's employment list.

20. The libellant accepted his being relieved of his command as his discharge from the respondent's employ.

21. Sometime in February 1948, when confronted with these receipts and his report of November 15, 1947, the libellant adopted an attitude of unconcern and did not attempt to explain the discrepancy between rupees actually received and rupees reported to have been received.

22. The National Surety Corporation made good on its bond for the net shortage in the libellant's financial account of the trip to Bombay.

23. At the trial of this case the libellant explained for the first time that the discrepancy resulted from having to pay "gratuities" to India custom officials, to pay native labor for loading the gunny sacks and grain fittings onto a lighter, and to hire the lighter to take this material away from the vessel.

24. When the libellant was relieved of his command, the respondent was starting to curtail the number of ships it had in service, and was giving preference to masters on the basis of seniority.

25. The real reason for relieving the libellant of his command was his failure to report the full sale price of the gunny sacks and grain fittings, although he would have been relieved on seniority basis in a very short time.

26. The libellant's wages were $645.05 per month.

27. No evidence was introduced to show whether libellant received a daily subsistence allowance.

28. After six months service the libellant was entitled to fourteen days vacation bonus per year, such bonus to be prorated when the libellant was employed for less than a year.

29. On January 7, 1948 the libellant had earned $124.43 net vacation bonus.

30. This sum was credited, with the libellant's knowledge, against the claim the respondent submitted to the National Surety Corporation for the 2,390 rupees the libellant failed to report as receipts from Bombay.

31. The "James Roy Wells" returned from Italy to Norfolk, Virginia, on May 19, 1948.

## Discussion.

The libellant is claiming wages and subsistence from January 8, 1948 to May 19, 1948, and vacation bonus from July 2, 1947 to May 19, 1948, all dates inclusive. He correctly concedes in his brief that the original hiring on July 2, 1947 was no more than a hiring "at will", giving the respondent the

absolute right to discharge him with or without cause. Lombard S. S. Co., Limited, v. Anderson, 4 Cir., 134 F. 568, 569.

The issue immediately presented is whether the third letter of instructions, received by the libellant on December 26, 1947, was an offer of a contract for the duration of the voyage to Italy mentioned therein, or whether it was a routine assignment under and pursuant to the original hiring at will.

I think that this was just a letter of assignment and nothing more, that it was a routine assignment and not an offer of a contract for the duration of the voyage to Italy.

To bear his burden of proof in the absence of an express offer of employment, the libellant must show that the inference of such an offer in this letter is clear and unequivocal, and that the facts and circumstances exclude all reasonable doubt. Jones v. Davis, 13 Fed.Cas. No. 7,460. That is, the libellant must prove by a preponderance of the evidence that this letter was an offer of employment.

The letter is not very definite and lacks that specificity that would be necessary for the libellant to prove clearly that it is an offer of employment for the duration of the voyage rather than an assignment of duty.

While it is true that this letter recognized the libellant as master of the "James Roy Wells" and that one could reasonably infer that the respondent expected to retain the libellant as master, it is equally true that the libellant could not have hired a crew or have taken this vessel to Italy or anywhere else without such a letter of instructions.

The libellant had just returned from Holland when he received this letter. It informed him of his next voyage—his cargo, destination, the agents to contact, suggestions as to fuel, water and ballast, and other general instructions for this impending voyage. It did not enclose a copy of the Charter Party, nor was there any evidence that the libellant received this promised copy before he was relieved of his command. Finally, the letter closed by telling when to end his present voyage.

There is nothing in this letter that relates to tenure of employment. On the contrary, it appears to be written on the premise that the libellant was then employed by the respondent and that this voyage to Italy was the libellant's next duty assignment pursuant to this employment.

Furthermore, under the facts that were known by the respondent when the libellant was relieved of his command I think the respondent was justified in acting as it did.

The master of a ship is the agent of the ship's owner. As such, he is entrusted with great authority over the command, navigation and operation of the vessel, especially when the vessel is in foreign waters. In keeping with this responsibility, he must act with utmost good faith, loyalty and fidelity to the owner in all his dealings affecting the vessel. 48 Am.Jur. 84.

This duty of faith, loyalty and fidelity requires him to report all moneys received by him in his capacity as master of the vessel. Hansen v. Barnard, 2 Cir., 270 F. 163; Robinson v. Hinckley, 20 Fed. Cas. No. 11,954. And the fraudulent failure to report all receipts works a forfeiture of his right to compensation. Hansen v. Barnard, supra.

The respondent discovered that the libellant reported receiving 2,490 rupees ($750) for gunny sacks and grain fittings when he had actually received 4,880 rupees ($1,469.-88).

When the libellant refused to attempt to explain that discrepancy, the respondent had no alternative, in looking after its own welfare, but to discharge him. Under those circumstances, the respondent was justified in doing what it did and it had the right to retain the libellant's vacation bonus and to apply it against the shortage in the libellant's account.

The libellant's belated explanation of the discrepancy, conveyed to the respondent for the first time at the trial of the case in Court, is far from convincing. Without passing on the credibility of the libellant's belated explanation of the discrepancy, it seems to me that, in all fairness to the respondent, this explanation comes too late

to affect the rights of the parties and to penalize the respondent for having acted as it did under the circumstances.

For the reasons expressed above, the libellant cannot recover any wages, subsistence or vacation bonus.

Conclusions of Law.

1. This Court has jurisdiction of this case.

2. The libellant failed to carry his burden of proving that the letter of instructions dated December 19, 1947 and received by the libellant on December 26, 1947 was an offer of employment for the duration of the voyage to Italy mentioned therein.

3. Therefore, this letter of instructions dated December 19, 1947 was not such an offer of employment, but was a routine assignment of duty under and pursuant to his employment at will.

4. By the libellant's failure to report all moneys received on the voyage to India, the respondent was justified in discharging the libellant on January 7, 1948, and in retaining and applying the libellant's accrued vacation bonus to reduce the shortage in the libellant's financial report.

5. Judgment is hereby entered for the respondent.