## PORTMAN v. AMERICAN HOME PRODUCTS CO.

United States District Court
S. D. New York.

June 25, 1951.

See also, D.C., 9 F.R.D. 613.

Cahill Gordon Zachry & Reindel, New York City (H. S. Glendening, J. H. Clark, and J. R. Bermingham, New York City, of counsel), for plaintiff.

Gordon Brady Caffrey & Keller, New York City (B. Phillips, and H. Keller, New York City, of counsel), for defendant.

**S. H. KAUFMAN, District Judge.**

Defendant moves in the alternative: (1) for the entry of judgment for defendant notwithstanding the verdict; or (2) for a new trial on the ground that the verdict is against the weight of the evidence; or (3) for a new trial on the ground that the verdict is the result of improper influence upon the jury.

The complaint sets forth two causes of action, both arising out of the same transaction. Under the first cause of action it is alleged that in February, 1944 defendant engaged plaintiff to aid defendant in the acquisition of businesses in the veterinary serum field and agreed to pay plaintiff the reasonable value of his services; that in August, 1944 plaintiff discovered that Fort Dodge Serum Company was available for sale and so informed defendant; that plaintiff, at defendant's request, carried on preliminary negotiations, secured financial data and participated in subsequent negotiations for the acquisition of Fort Dodge Serum Company by defendant; and that in April, 1945, as a result of such negotiations, defendant acquired all the stock of Fort Dodge Serum Company.

Under the second cause of action the same facts are pleaded, except for the alleged express agreement of defendant to pay plaintiff for his services. This cause of action is based on *quantum meruit* for the reasonable value of plaintiff's services.

The answer substantially admits that plaintiff rendered services to defendant as alleged in the complaint; alleges that at the time of such services plaintiff was employed as vice-president of Research Products Corporation, a wholly owned subsidiary of defendant, and rendered such services as part of his duties as such officer; and denies that there was any agreement to pay for such services except for the payment of plaintiff's salary of $10,000 per year as an officer of such subsidiary.

Evidence at the trial established the following uncontroverted facts. In January, 1944 plaintiff, Dr. Weiner and certain other persons were members of a partnership, doing business under the name of Research Products, which was engaged in manufacturing veterinary pharmaceuticals in Kansas City, Missouri. During that month plaintiff initiated negotiations for the sale of that business to defendant, a corporation engaged through its subsidiaries in the manufacture and sale of drugs and other products. Plaintiff, Dr. Weiner and their attorney, Mr. Margolin, and representatives of defendant met to discuss the proposed sale during January and February, 1944. At one such meeting in Philadelphia on February 15, 1944, Mr. Alvin G. Brush, chairman of the board of directors of defendant, stated that defendant was interested in entering the veterinary pharmaceutical field, that the business of the partnership might serve as a nucleus that could be expanded, and that plaintiff could aid in that expansion by bringing to defendant's attention other companies that defendant might acquire. Further reference to that meeting will be made below.

On February 18, 1944, plaintiff and his partners granted defendant an option, exercisable during the period "commencing August 1, 1944 and ending September 30, 1944," to purchase all the assets and good will of their business. At the same time defendant and Dr. Weiner, who was in charge of all technical operations of the partnership, entered into an agreement

which provided that, if the option should be exercised, Dr. Weiner would remain associated with the partnership business or with defendant for at least one year, and would not otherwise engage in any similar business for five years after defendant should have acquired the partnership business.

During the period from February, 1944 until August 1, 1944, plaintiff suggested three companies for possible acquisition by defendant. Although defendant manifested an interest in these companies, it acquired none of them.

On July 14, 1944 defendant notified plaintiff that it intended to exercise its option to purchase the partnership business on August 1, 1944, and on that day the option was formally exercised. On August 23, 1944 the transaction was closed "as of August 1, 1944". The assets and good will of the partnership were transferred to Research Products Corporation, a Kansas corporation organized on July 31, 1944, which became a wholly owned subsidiary of defendant. In accordance with the option defendant paid plaintiff and his partners $114,943.28, of which $100,000 represented payment for good will and $14,943.28 represented the net value of the partnership assets.

Plaintiff was elected vice-president and a director of Research Products Corporation on August 7, 1944, at a salary of $10,000 per year. He was in general charge of the administration of the affairs of the corporation, under the direction and control of the officers of defendant and another subsidiary of defendant. The scope of plaintiff's duties will be further discussed below.

Early in September, 1944, plaintiff and Dr. Weiner, who had also become an employee of Research Products Corporation in accordance with his agreement with defendant, made a trip to St. Paul, Minn. and Fort Dodge, Iowa to call upon customers. In the latter city they visited Fort Dodge Serum Company, the most important customer of the old partnership and the new corporation. It was Fort Dodge Serum Company which, in the negotiations between plaintiff, Dr. Weiner and Mr. Brush

on February 15, 1944, plaintiff represented would be retained as a customer of Research Products Corporation in all events. On this visit plaintiff learned that Fort Dodge Serum Company might be for sale. He promptly conveyed this information to officials of defendant, and was instructed to pursue the matter. During the next few months plaintiff procured for defendant financial data concerning Fort Dodge Serum Company, visited the company with officials of defendant to inspect the properties, arranged for Mr. Brush and another senior officer of defendant to visit the company, and met with officials and stockholders of the company in Kansas City and brought them to Mr. Margolin for advice on the tax aspects of the proposed transaction.

On January 20, 1945 representatives of the stockholders of Fort Dodge Serum Company went to New York to negotiate with defendant for the sale of that company. Plaintiff accompanied them and attended all conferences of such representatives with officials of defendant in New York. These negotiations resulted in the execution of an agreement on January 26, 1945 providing for the exchange of all the stock of the serum company for 16,520 shares of defendant having a market value on that day of approximately $1,160,000. The exchange of stock was made on April 3, 1945; the 16,520 shares of defendant then had a market value of $1,207,942.40.

The expenses incurred by plaintiff in connection with the acquisition of Fort Dodge Serum Company were paid by Research Products Corporation on vouchers submitted by plaintiff. Such expenses related to plaintiff's original trip and at least one subsequent trip from Kansas City to Fort Dodge, Iowa, and entertainment of officials and stockholders of the serum company in Kansas City, and included all expenses of plaintiff in bringing the representatives of the stockholders of Fort Dodge Serum Company to New York on January 20, 1945 and maintaining them in New York until January 26, 1945.

Plaintiff continued in the employ of Research Products Corporation until August 15, 1945 when he was transferred to the

payroll of Boyle-Midway, another subsidiary of defendant. However, he continued to perform his duties for Research Products Corporation and worked in the same office and at the same salary until his resignation on January 21, 1946. On the same day Dr. Weiner resigned from defendant's organization.

On February 1, 1946 plaintiff and Dr. Weiner purchased the assets of Research Products Corporation from defendant for the sum of $26,882.72. On the same day he and Dr. Weiner organized a new corporation to take over and carry on the business of Research Products Corporation. Shortly prior to that time defendant had released Dr. Weiner from his covenant not to engage in any business in competition with defendant and had waived any objection to any dealing by plaintiff and Dr. Weiner with the customers of Research Products Corporation.

During the period from January 26, 1945, when defendant agreed to acquire the stock of Fort Dodge Serum Company, until February 1, 1946, a few days after plaintiff's resignation from defendant's organization, plaintiff wrote hundreds of letters to officials of defendant. In none of those letters did plaintiff claim a finder's fee or other compensation for his work in connection with the acquisition of the stock of Fort Dodge Serum Company by defendant. From January 26, 1945 until January, 1946, plaintiff did not make any oral claim for such compensation. On or about April 1, 1946 plaintiff unsuccessfully endeavored to secure severance pay from defendant. In November, 1946 plaintiff requested counsel for defendant to try to procure a refund of about $30 for excessive Social Security deductions from his salary. In neither case did plaintiff assert any right to the compensation claimed in this suit. During the week before Easter, 1947, Mr. Margolin, the attorney who had represented plaintiff and later represented defendant, on his own initiative informed Mr. Brush that plaintiff was unhappy because he had not been paid for his work in connection with Fort Dodge Serum Company. But no written claim was made by plaintiff until his attorneys in this action demanded payment from defendant in a letter dated January 23, 1948.

Two expert witnesses testified on behalf of plaintiff that, in their opinion, the value of plaintiff's services in connection with the acquisition of Fort Dodge Serum Company was an amount equal to 5% of the value of the shares of defendant given in exchange for the stock of Fort Dodge Serum Company, or about $60,000. The jury awarded damages to plaintiff in the amount of $40,000.

██ There is little evidence to support the theory of the first cause of action that there was an express contract between the parties entitling plaintiff to compensation for his services in connection with defendant's acquisition of Fort Dodge Serum Company. The only evidence of such a contract is found in plaintiff's testimony. On direct examination he testified that at the meeting in Philadelphia on February 15, 1944, referred to above, Mr. Brush stated that if plaintiff should acquire any businesses for defendant, "we will pay you to the proportion of the value of what you acquire." But in his examination before trial plaintiff testified that at this meeting Mr. Brush had only said that "for me to acquire other companies would be very profitable for me." This version of Mr. Brush's remarks was supported by plaintiff's own counsel, Mr. Margolin, who was present at the meeting. Plaintiff's testimony that Mr. Brush specifically promised to pay him a percentage of the value of any business he might acquire is wholly untrustworthy in the light of plaintiff's self-contradiction, the lack of any support for such testimony, and the other circumstances in the case. Assuming that Mr. Brush stated that it would be "very profitable" for plaintiff to acquire companies for defendant, this statement cannot create an express contract between the parties. Such a remark, made in the course of long negotiations on a different matter, would not seem to a reasonable man to have been made with contractual intent (Restatement, Contracts § 5), and in any event is too vague and indefinite to create an express contract. Von Reitzenstein v. Tomlinson, 1928, 249

N.Y. 60, 162 N.E. 584; 1 Williston on Contracts (Rev.Ed.) § 41. Furthermore, under all the facts and circumstances in this case, such a remark seems to afford insufficient basis for quasi-contractual recovery.

■ Whatever may have been the relationship between the parties in February, 1944, it is clear that a new relationship was created on August 7, 1944, when plaintiff became an officer and director of Research Products Corporation. That corporation was a wholly owned subsidiary of defendant and was in fact under the complete domination and control of defendant. As an officer and director of that corporation plaintiff occupied a position of trust and confidence. Beatty v. Guggenheim Exploration Co., 1918, 223 N.Y. 294, 119 N.E. 575; Keller v. American Chain Co., Inc., 1930, 255 N.Y. 94, 174 N.E. 74. He was employed on a full time basis on an annual salary. The services for which he now seeks compensation were rendered at times when he was working for Research Products Corporation, a captive of defendant. The expenses incurred in connection with those services were paid by that corporation. In this situation, neither of the parties would have reasonably entertained the thought that plaintiff would have the right to any compensation for his services beyond his regular salary. It is far more reasonable to conclude that both parties intended the employment arrangement to replace any vague contractual relationship that may have existed. "Mutual assent to abandon a contract, like mutual assent to form one, may be inferred from the attendant circumstances and conduct of the parties." 6 Williston on Contracts (Rev.Ed.) § 1826. Restatement, Contracts § 406(b).

■ It is contended, on behalf of plaintiff, that the services here in question were outside the scope of his duties as vice-president of Research Products Corporation. He testified that his duties were as follows: to assist in selling, to manage the office, to make leases, to take care of the warehouses, and to help set up the accounting system. In his examination before trial he testified that when he was appointed vice-president, "nothing specific" was stated concerning his duties. There is no evidence that any authorized officer of defendant at any time defined or limited plaintiff's duties. Mr. Brush testified that he told plaintiff, prior to his employment, that his duties would include helping in the development of defendant's veterinary business and bringing to defendant's attention any possible mergers. There is no adequate basis for concluding that the services of plaintiff were beyond the scope of his regular duties.

■ In support of plaintiff's quasi-contractual claim, evidence was introduced in an effort to show that defendant had a reasonable expectation of paying for the services here in question. Plaintiff testified that, shortly before the conclusion of the negotiations for the acquisition of the Fort Dodge Serum Company, Mr. Brush told plaintiff that he had done an excellent job and that Mr. Brush would "take care of" plaintiff as he had promised. This testimony was substantially supported by Mr. Margolin, who participated in the negotiations. Mr. Brush testified that he told plaintiff he would take care of him in a position with defendant's organization. Since, as has been shown, the services rendered by plaintiff were part of his regular duties, it is unreasonable to infer from this remark, even in the version most favorable to plaintiff, that Mr. Brush expected to pay plaintiff a "finder's fee" in addition to his salary. It is far more reasonable to conclude that Mr. Brush expected to give plaintiff a gratuitous reward for his good work, in the form of a promotion or otherwise. In re Merz, 2 Cir., 1930, 45 F.2d 558.

■ Plaintiff's long delay in asserting a claim against defendant is strong evidence that he had no reasonable expectation of being paid for his services. Riddlesbarger v. Hartford Insurance Co., 1868, 7 Wall. 386, 74 U.S. 386, 390, 19 L.Ed. 257. It was admitted that he failed to make any written claim against defendant until the virtual inception of this action, about three years after his services were performed. Furthermore, there is no evi-

dence that he ever made a definite oral claim against defendant. The most that can be said is that in the spring of 1947 he complained to a director of defendant that he had not been rewarded for his services and that at about the same time Mr. Brush was informed about plaintiff's dissatisfaction with his treatment. But such a complaint indicates that plaintiff believed that he had no claim but that he hoped for a reward for his services.

■ The verdict, in my opinion, is against the great weight of the evidence and should be set aside, and the motion for a new trial on that ground should be granted. Since there is slight evidence upon which the jury could have based its verdict, it is not appropriate to enter judgment for defendant notwithstanding the verdict. Binder v. Commercial Travelers Mut. Acc. Ass'n, 2 Cir., 1948, 165 F.2d 896; Marsh v. Illinois Cent. R. Co., 5 Cir., 1949, 175 F.2d 498.

After the verdict was announced, defendant moved to set aside the verdict and for a new trial on the ground that the verdict was the result of improper influence upon the jury. A hearing was held upon that motion two weeks after the trial. Evidence at that hearing established the following facts. On the last day of the trial, after the court's charge, the jury retired at about 12:30 P.M. and went to lunch, and commenced its deliberations at about 1:45 P.M. At about 4 P.M. the forelady summoned the bailiff and instructed him to inform the court that the jury could not agree on a verdict. The bailiff told her, and she reported to the jury, that the jury would have to continue their deliberations until they reached an agreement. The bailiff did not report that incident to the court. About 10 to 20 minutes after the incident the bailiff returned to the jury room, gave the forelady a piece of paper and told her that she would have to write a message to the judge on the piece of paper. She told the bailiff that the jury felt then that it would be able to reach an agreement. At 4:40 P.M. the jury returned the verdict.

■ There can be no doubt that the action of the bailiff in instructing the jury to continue their deliberations until they reached a verdict was an improper interference with the jury. Whether the verdict should be set aside on this ground need not be determined since a new trial is being granted on another ground.

Motion for judgment notwithstanding the verdict is denied.

Motion for a new trial is granted on the ground that the verdict is against the great weight of the evidence.