Paula JONES a/k/a "Paula Corbin Jones," Plaintiff,

v.

Abraham HIRSCHFELD a/k/a "Abe Hirschfeld," Defendant.

No. 01 Civ. 7585(PKL).

United States District Court, S.D. New York.

Sept. 13, 2004.

Thomas F. Cohen, Abramson Law Group, New York City, for Plaintiff.

Salvador V. Delgado, Elmhurst, NY, for Defendant.

### OPINION AND ORDER

LEISURE, District Judge.

Plaintiff, Paula Jones, a resident of Arkansas, brings this diversity action against defendant, Abraham Hirschfeld, a resident of New York, alleging breach of contract. Three motions, filed in succession, are currently pending before the Court: first, defendant's motion for dismissal of the Complaint pursuant to Rule 12(c) and, in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (hereinafter referred to as defendant's motion for summary judgment); second, defendant's motion for recusal of the Court from this action pursuant to 28 U.S.C. § 455; and third, defendant's motion for relief from his waiver of a jury trial. For the reasons discussed herein, the motion for recusal is denied, the motion for summary judgment is granted, and the motion for a jury trial is denied.

### BACKGROUND

This case arises from the complicated and contentious proceedings surrounding the sexual harassment lawsuit filed by Paula Jones against then President William Jefferson Clinton in 1994 in the United States District Court for the Eastern District of Arkansas (the "Arkansas Lawsuit"). Fortunately, however, the Court need not unravel that Gordian knot in order to resolve the instant litigation. Instead, this case turns on contrastingly simple facts, which unless otherwise noted are uncontested, and elementary principles of contract law.[1]

The origin and progression of the Arkansas Lawsuit, suffice it to say, attracted wide media attention. In October of 1998, while the district court's dismissal of the Arkansas Lawsuit was under appeal, Hirschfeld interjected himself into the fray surrounding that case by publicly offering Jones $1,000,000 to drop her suit against President Clinton. Thereafter, at a press

---

1. The facts of this case were also discussed in the Court's previous Opinion and Order resolving the parties' first attempt at filing summary judgment motions, see Jones v. Hirschfeld, 01 Civ. 7585(PKL), 2003 WL 21415323 at *1 (S.D.N.Y. June 19, 2003), as well as in Magistrate Judge Gorenstein's thorough opinion denying Hirschfeld's attempt to depose former President Clinton in this case, see Jones v. Hirschfeld, 219 F.R.D. 71, 72–73 (S.D.N.Y.2003), familiarity with which is assumed.

conference held on October 31, 1998, Jones and Hirschfeld signed a written agreement ("October 31 agreement" or "agreement"). Under the agreement, in order to "underwrite" and "facilitate" the settlement of the Arkansas Lawsuit, Hirschfeld agreed to transfer $1,000,000 on November 2, 1998 to a trust account set up by Jones' then attorneys. This money, however, would not be disbursed "unless and until the Court of record and of appropriate juris-

diction over the Lawsuit so orders or otherwise officially accepts or adopts, on the record, a stipulation of settlement of the Lawsuit, so that the Lawsuit is and shall be discontinued forthwith and dismissed with prejudice." (Compl., Ex. 2.) [2]

At this point the parties' accounts diverge. Plaintiff claims that although defendant did not wire the $1,000,000 to her attorneys' account, she nevertheless set-

---

2. The full agreement reads as follows:

Whereas, a certain lawsuit has been commenced and is ongoing between Paula Corbin Jones, Plaintiff, and William Jefferson Clinton and Danny Ferguson, Defendants, and is now on appeal to the United States Court of Appeals from the United States District Court in and for the Eastern District of Arkansas (hereinafter referred to as "the Lawsuit"); and

Whereas, attorneys for Ms. Jones and the attorney for Mr. Clinton have been engaged in negotiations to settle the Lawsuit and have reached an impasse; and

Whereas, Mr. Clinton is the President of the United States; and

Whereas, Mr. Abraham J. ("Abe") Hirschfeld, a public spirited citizen of the United States, who resides in the State of New York, has determined that it would be in the national interest for the Lawsuit to be settled as expeditiously as possible; and

Whereas, Mr. Hirschfeld has heretofore indicated a willingness to underwrite a final settlement of the Lawsuit in the amount of ONE MILLION DOLLARS ($1,000,000); and

Whereas, it has been brought to Mr. Hirschfeld's attention that several parties in addition to Ms. Jones, namely her attorneys at several stages of said litigation, have expressed or may express a claim to all or part of any settlement of the Lawsuit; and

Whereas, Mr. Hirschfeld's said intention is to make no individual party or attorney whole, but only to facilitate said settlement; and

Whereas, the individuals and or parties who may foreseeably attempt to enforce a claim against a settlement in the Lawsuit are the following:

Paula Corbin Jones
Joseph Cammarata, Esq.

Gilbert K. Davis, Esq.
Rader, Campbell, Fisher & Pike (A Professional Corporation)
The Rutherford Institute (John W. Whitehead, President)
William McMillan, Esq.; and

Whereas, Mr. Hirschfeld remains desirous of facilitating a final settlement of the Lawsuit and to that end he has agreed to cause a wire transfer to the trust account of Rader, Campbell, Fisher & Pyke in the amount of ONE MILLION DOLLARS ($1,000,000) on Monday, November 2, 1998;

It is hereby understood and agreed, as follows:

1. On Monday, November 2, 1998, Mr. Hirschfeld will cause a wire transfer of ONE MILLION DOLLARS ($1,000,000) to the trust account of Rader, Cambell, Fisher & Pyke (as agent for Paula Jones)....

2. Rader Campbell Fisher & Pyke will not withdraw or distribute any part of the ONE MILLION DOLLARS ($1,000,000) from its trust account unless and until the Court of record and of appropriate jurisdiction over the Lawsuit so orders or otherwise officially accepts or adopts, on the record, a stipulation of settlement of the Lawsuit, so that the Lawsuit is and shall be discontinued forthwith and dismissed with prejudice.

3. Paula Corbin Jones will indemnify and hold Mr. Abraham J. ("Abe") Hirschfeld harmless from any and all claims of or by any person (including, but not limited to, the persons listed above) arising out of Mr. Hirschfeld's causing the wire transfer to be made to Rader, Campbell, Fisher & Pyke as provided above.

4. The execution by the undersigned shall be deemed a condition precedent to the transfer of funds as provided above.

tled the Arkansas Lawsuit resulting in its dismissal in accordance with the October 31 agreement. As a result, she claims that defendant has breached their agreement and owes her $1,000,000 plus interest and costs. Defendant, on the other hand, claims that Jones was required to reject his offer of settlement during her negotiations with President Clinton and that, because of the importance to Jones and her supporters of obtaining money directly from the President, Jones, in fact, rejected his offer.

In support of this contention, defendant has, in his prior affidavits to the Court, presented evidence that Jones rejected cashiers checks tendered to her by defendant both prior to and contemporaneously with the October 31 agreement. Jones hotly contests Hirschfeld's account regarding these checks; however, for the purposes of the instant motion, the Court need not delve into this aspect of the parties' dispute. Rather, what is undisputed on the present record is the following: (1) Hirschfeld did not wire $1,000,000 to Jones' lawyers on November 2, 1998.(2) On November 13, 1998, as part of the ongoing settlement negotiations between Jones and President Clinton, Jones' attorney, William N. McMillan, Esq., sent a letter to Robert S. Bennett, Esq., President Clinton's attorney, which stated, "This letter shall constitute Paula Corbin Jones' final offer to settle the [Arkansas Lawsuit] in the amount of $850,000." (Letter from William N. McMillan, Esq., to Robert S. Bennett, Esq., of November 13, 1998 (the "McMillan letter"), attached as Ex. C to Def.'s Opp. to Motion to Quash Subpoena and for a Protective Order, filed November 7, 2003.) This letter goes on to state, "I [Mr. McMillan] further represent to you [Mr. Bennett] that the money from Mr. Abraham Hirschfeld is no longer on the table and that there will be no payment from Mr. Hirschfeld as part of the settlement with your client." (*Id.*) (3) That same day, attorneys for Jones and President Clinton signed an agreement settling the Arkansas Lawsuit for $850,000. (*See* Stipulation of Settlement and Release, dated November 13, 1998, attached as Ex. B. to Def.'s Mot. for Judgment on the Pleadings, to Dismiss and for Summary Judgment, filed January 17, 2004. ("Def.'s 1/17/04 Summary Judgment Mot.")) [3] The agreement states that it constitutes "the entire and only agreement

---

(Compl., Ex. 2.)

**3.** Defendant's original motion papers, filed with the Clerk on January 16, 2004, did not include any of the exhibits referenced therein, although the papers received by the Court and, apparently, by opposing counsel did include *most* of the exhibits. Defendant is directed to file these exhibits in the Clerk's Office of this Court directly upon receipt of this opinion. Even more incredibly, the McMillan letter, although featured prominently in defendant's motion, was not even included with the courtesy copy of the motion papers submitted to the Court. The Stipulation of Settlement, however, was previously filed as part of Exhibit 5 of the Declaration of Jonathan S. Jeffress, Esq., dated Oct. 14, 2003, which was served on plaintiff. The McMillan letter was also filed and served on plaintiff earlier in the case and plaintiff has not objected to the Court relying on the Stipulation or the letter in resolving the pending motions. As noted previously in this case, both sides have had trouble complying with the filing procedures in the Southern District and, even more inexcusably, with timely serving each other with their respective motion papers. In light of the slipshod performance of both sides, the Court has conducted an independent review of the entire record in this case to reach an appropriate result for the pending motions. *See, e.g., Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 74 (2d Cir. 2001); *Monahan v. New York City Dep't of Corrections,* 214 F.3d 275, 292 (2d Cir.2000); *Doe v. National Bd. of Podiatric Med. Examiners,* No. 03 Civ. 4034(RWS), 2004 WL 912599 at *4 (S.D.N.Y. April 29, 2004), *see also, Giannullo v. City of New York,* 322 F.3d 139, 140–43 (2d Cir.2003).

between the parties and that it will be filed in open Court," and further that "the agreement of each of [the parties] to this Stipulation of Settlement and Release is not subject to any condition, and that the consideration recited herein is the sole consideration for the parties' agreement to this Stipulation." (*Id.*) Both the McMillan letter and its apparent rejection of Hirschfeld's money as well as the terms of the Stipulation of Settlement were widely reported in the news media. (*See* Def.'s 1/17/04 Summary Judgment Mot., Ex. C.; Decl. of Jonathan S. Jeffress, Esq., dated Oct. 14, 2003, Ex. 2; Aff. of Abraham Hirschfeld, sworn to on September 30, 2002 ("Hirschfeld Aff."), ¶¶ 5–6., Ex. 3.) Finally, (4) on December 2, 1998, as the result of the settlement agreement, the Eighth Circuit dismissed Jones' appeal. *Jones v. Clinton*, 161 F.3d 528 (8th Cir. 1998). Following the dismissal of the Arkansas Lawsuit, it is also undisputed that Hirschfeld never paid any money to Jones. According to Hirschfeld, however, no payment was ever requested of him. (Hirschfeld Aff. ¶¶ 4, 22.)

Plaintiff filed this lawsuit on August 15, 2001. Defendant, who was incarcerated at the time, ultimately filed an Answer on November 14, 2001. In addition to denying plaintiff's breach of contract claim, Hirschfeld's Answer also alleges a counterclaim against Jones seeking damages for harassment and defamation.

Following the close of discovery pursuant to the original case management plan in this action, both parties moved for summary judgment. Due to the dearth of admissible evidence presented by the parties in their respective cross motions, the Court granted defendant's request to reopen discovery in an Opinion and Order dated June 19, 2003. *Jones v. Hirschfeld*, 01 Civ. 7585(PKL), 2003 WL 21415323 (S.D.N.Y. June 19, 2003). This decision

also denied defendant's request for a jury trial, finding that Hirschfeld had waived the right to a trial by jury in this action and that there were no grounds for relieving him from the effect of this waiver. *Id.* at *5–6. With regard to the ultimate disposition of the case, the Court noted that this action-"might well be appropriate for resolution at the summary judgment stage on a fully developed record" but that summary judgment for either side was unlikely in the absence of further discovery. *Id.* at *3. Thereafter, the parties did engage in additional discovery. Most notably, Hirschfeld obtained a copy of the McMillan letter and the Arkansas Lawsuit Stipulation of Settlement, which, inexplicably, had heretofore not been placed before the Court.

The parties did not, however, promptly follow the Court's suggestion that they refile for summary judgment following the extended discovery period. Instead, defendant waited until after the close of the extended discovery deadline, the deadline for dispositive motions, and, indeed, the deadline for the parties' proposed Pre-Trial Order, to submit the instant motion for summary judgment. Although defendant cites no supporting legal authority, the thrust of his motion is that the terms of the McMillan letter and the Stipulation of Settlement require dismissal of plaintiff's contract claim.

At a conference held January 20, 2004, shortly after the filing of defendant's motion, the latest in a long line of counsel for defendant, Salvador V. Delgado, Esq., was chastised by the Court regarding defendant's conduct in this case, including defendant's contumacious antics before the magistrate judge presiding over discovery disputes, his chaotic habit of alternating between retained counsel and appearing *pro-se*, and his total disregard for the Court's scheduling deadlines. Based on

the Court's comments during this conference, defendant subsequently moved for the Court to recuse itself. In addition, defendant later filed a renewed motion for relief from his waiver of a jury trial.

## DISCUSSION

### 1. Defendant's Motion for Recusal

Because it presents a threshold issue as to whether the Court should continue to preside over this action, the first issue to be addressed is defendant's motion for recusal. Defendant argues that the Court should recuse itself pursuant to 28 U.S.C. § 455, which provides in pertinent part, "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Defendant claims that the Court's conduct at the January 20 conference creates at least the appearance of bias or hostility, necessitating recusal. In support of this argument, defendant points to a number of statements by the

Court both on and off the record during the conference, in which the Court allegedly expressed its bias against defendant.[4]

■ The Supreme Court has stated:

The goal of section 455(a) is to avoid even the appearance of partiality. If it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists because the judge does not recall the facts, because the judge actually has no interest in the case or because the judge is pure in heart and incorruptible.

*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860, 108 S.Ct. 2194, 100 L.Ed.2d 855, (1988) (quoting *Health Servs. Acquisition Corp. v. Liljeberg*, 796 F.2d 796, 802 (5th Cir.1986)). Recusal under this section, however, requires a showing that would cause "an objective, disinterested observer fully informed of the underlying facts [to] entertain significant

---

4. Defendant highlights portions of the following statement made on the record by the Court, which, in its entirety, reads as follows: It appears we have another lawyer appearing for the defendant, Mr. Hirschfeld. It has been a bit of a revolving door approach by Mr. Hirschfeld to this litigation as far as today a lawyer, tomorrow not a lawyer, the next day a lawyer. As long as it does not frustrate the plaintiff in proceeding with his case, these types of things I usually put up with, but when it reaches a point where justice delayed may well impact the rights of a party in proceeding, and a casual attitude is demonstrated by a litigant, the Court must take steps and it could even take the form of sanctions. It would be wrong to impose the sanctions on the new counsel, even though the cases that I have reviewed in the past provide for sanctions against both the party and his attorney. But we have really reached the point where Mr. Hirschfeld is testing the patience of the Court, and he may be putting himself unwittingly in a position where it detracts from his position before the Court. As to a judge's annoyance against a litigant, he has to restrain that annoyance. This is a bench trial. With a bench trial, there is no advantage at all to irritating the judge, as experienced counsel know. (1/20/04 Tr. at 2.) Defendant also contends that midway through this statement, the Court interjected words to the effect that it did not think it could be impartial in this case and made a sweeping gesture with its hand while curling its lips and shaking its head. These statements and gestures do not appear on the record, however, the transcript does reflect several comments by the Court during the conference that expressed displeasure and annoyance with the conduct of defendant and his counsel. For example, the Court stressed, "There are 24 hours in every day, counselor, and I am not used to having a lawyer appear who is an officer of the court and be as unprepared as you are today, to be frank with you, and I have been a judge 20 years." (*Id.* at 9.)

doubt that justice would be done absent recusal." *In re Aguinda*, 241 F.3d 194, 201 (2d Cir.2001) (Winter, J.) (quoting *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir.1992)). "Thus, the test to be applied is an objective one which assumes that a reasonable person *knows and understands all the relevant facts." In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1313 (2d Cir.1988) (emphasis in original).

▮ Absent extreme circumstances, a judge's rulings or expressions of opinion generally fail to justify recusal. In particular, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Thus, the Court is not constrained to mere gentle chiding in the face of deleterious conduct by the parties or their lawyers during a litigation. "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display" do not establish bias or partiality. *Id.* at 555–56, 114 S.Ct. 1147. "A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Id.* at 556, 114 S.Ct. 1147.

▮ "Discretion is confided in the district judge in the first instance to determine whether to disqualify himself." *In re Drexel Burnham Lambert*, 861 F.2d at 1312. In making this decision, "the trial judge must carefully weigh the policy of promoting public confidence in the judicia-ry against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case." *Id.* "A judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is." *Id.; In re Aguinda*, 241 F.3d at 201 ("[W]here the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited.").

▮ In light of these well-settled principles, it is clear that defendant's motion falls short of the mark. When placed in the context of the entire January 20 conference and in light of the history of this case as a whole, the Court's expressions of irritation toward the defendant and his lawyer do not manifest the sort of deep-seated favoritism or antagonism that would require recusal in this case. Rather, the Court's comments throughout this conference represent admonishments to the defendant to take the case seriously and cease his haphazard behavior. Indeed, as the balance of this opinion shows, had defendant made a genuine and competent effort at defending this case earlier in the proceedings, he would have wasted much less of the plaintiff's, the Court's, and his own time. Accordingly, defendant's motion for recusal is denied.

### 2. Defendant's Motion for Summary Judgment

As an initial matter, defendant's motion, styled as a motion pursuant to Rule 12(c) and Rule 56 of the Federal Rules of Civil Procedure, is based primarily on the McMillan letter and the Stipulation of Settlement between Jones and President Clinton, and clearly provides no grounds for dismissal solely on the pleadings. Accordingly, the Court will address the motion exclusively as a motion for summary judgment.

■ It bears noting that defendant's casual attitude toward the procedural basis for his motion is consistent with his overall effort in preparing the motion. The basis for the motion, which consists of a two page "Statement of Material Facts as to Which There Exists No Genuine Issue" and a two page "Memorandum in Support," is essentially that plaintiff's statements embodied in the McMillan letter and the Stipulation of Settlement are inconsistent with the parties' October 31, 1998 agreement and require dismissal.[5] In spite of being rough around the edges, however, defendant's motion is significant in that, for the first time, it puts the McMillan letter and an authenticated version of the Stipulation of Settlement before the Court.[6] These documents are compelling evidence supporting defendant's position, taken consistently throughout this litigation, that plaintiff agreed not to accept defendant's money during her negotiations with President Clinton and thereby abandoned the October 31 agreement. Indeed, on the present record, they are sufficient to justify summary judgment in favor of defendant.[7]

A moving party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Holt v. KMI–Continental Inc.*, 95 F.3d 123, 128 (2d Cir.1996). The substantive law underlying a claim determines if a fact is material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When considering the motion, "the judge's function is not himself to weigh the evidence and determine truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. 2505; *see also Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986).

In determining whether genuine issues of material fact exist, the Court must resolve all ambiguities and draw all justifiable inferences in favor of the nonmoving party. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Holt*, 95 F.3d at 129. The moving party bears the burden of demonstrating that no genuine issue of material

---

**5.** That said, plaintiff's briefing on this motion also leaves something to be desired. Plaintiff has failed to submit a counter statement of material facts as to which their remains an issue to be tried as required by Local Civil Rule 56.1(b), in spite of being reminded of this requirement in the Court's previous summary judgment decision. *Jones v. Hirschfeld*, 2003 WL 21415323 at *4 n. 9. Furthermore, rather than focusing on the importance of the McMillan Letter and the Stipulation of Settlement, plaintiff submitted answering papers essentially reiterating her arguments in response to defendant's previous summary judgment motion. As noted previously, because the parties have failed to convincingly marshal their facts and arguments, the Court has performed an independent review of the record to determine whether summary judgment is warranted.

**6.** Because of the discovery delays in this case, neither document was before the Court when it determined defendant's prior summary judgment motion.

**7.** In light of the fact that abandonment and rejection have been crucial issues in this case from the beginning, and were addressed by plaintiff in her opposition to defendant's motion, the Court does not find any prejudice to plaintiff resulting from the opaque nature of defendant's argument.

fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Gallo v. Prudential Residential Serv. L.P.*, 22 F.3d 1219, 1223–24 (2d Cir.1994). "[T]he movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995). Once the moving party discharges his burden of demonstrating that no genuine issue of material fact exists, the burden shifts to the nonmoving party to offer specific evidence showing that a genuine issue for trial exists. *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. "Conclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.'" *Delaware & Hudson Ry. Co. v. Conrail*, 902 F.2d 174, 178 (2d Cir.1990) (quoting *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505, and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). In other words, "[t]he non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation of conjecture." *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (quotations omitted). "A 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *Dister v. Cont'l Group*, 859 F.2d 1108, 1114 (2d Cir.1988) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

Rescission of a contract by abandonment requires the mutual assent of the parties. *Armour & Co. v. Celic*, 294 F.2d 432, 435 (2d Cir.1961); *see also Graham v. James*, 144 F.3d 229, 238 (2d Cir.

1998); *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL–CIO*, 816 F.Supp. 864, 870 (S.D.N.Y.1992); N.Y. Jur.2d, Contracts § 488 (1996) ("A contract duly executed and thereafter abandoned or ignored by the parties is unenforceable."). The intention to abandon a contract need not be manifested expressly, however, but may "be inferred from attendant circumstances and conduct of the parties." *Armour & Co.*, 294 F.2d at 435; *Aini v. Sun Taiyang Co., Ltd.*, 964 F.Supp. 762, 777 (S.D.N.Y.1997); *Portman v. Am. Home Prods. Co.*, 98 F.Supp. 494, 499 (S.D.N.Y.1951) ("Mutual assent to abandon a contract, like mutual assent to form one, may be inferred from the attendant circumstances and conduct of the parties."); *EMF General Contracting Corp. v. Bisbee*, 6 A.D.3d 45, 49, 774 N.Y.S.2d 39, 43 (1st Dept.2004). ("A contract will be treated as abandoned when one party acts in a manner inconsistent with the existence of the contract and the other party acquiesces in that behavior."). "Where conduct is relied upon to establish the abandonment, the acts of the parties must be positive, unequivocal and inconsistent with an intent to be further bound by the contract." *Armour & Co.*, 294 F.2d at 436; *Aini*, 964 F.Supp. at 777; *Int'l Bhd. of Teamsters*, 816 F.Supp. at 870; *EMF General Contracting*, 6 A.D.3d at 49, 774 N.Y.S.2d at 43; *Rosiny v. Schmidt*, 185 A.D.2d 727, 732, 587 N.Y.S.2d 929, 932 (1st Dep't.1992). "Generally, a finding of an abandonment will be based upon clear, affirmative conduct by at least one of the parties that is entirely at odds with the contract." *EMF General Contracting*, 6 A.D.3d at 50, 774 N.Y.S.2d at 43. The burden of proving the intent to abandon rests upon the party asserting it, *Armour & Co.*, 294 F.2d at 436, and ordinarily presents an issue of fact, *Matter of Rothko's Estate*, 43 N.Y.2d 305, 324, 372 N.E.2d

291, 299, 401 N.Y.S.2d 449, 457 (1977); *Dutch v. Basile*, 170 A.D.2d 966, 966, 566 N.Y.S.2d 801, 801 (4th Dep't.1991).

Because the parties' intent to abandon a contract is a factual question, it is not often grounds for summary judgment. Nevertheless, where there is no genuine issue of fact as to whether a contract has been abandoned, summary judgment is appropriate. For example, in *Klopfenstein v. Pargeter*, 597 F.2d 150 (9th Cir.1979), the court upheld the district court's grant of summary judgment in favor of the defendant, Pargeter, based on a finding that the plaintiff, Klopfenstein, through his conduct, had unequivocally shown that he no longer intended to follow through with the parties' joint venture agreement. In that case, Klopfenstein had sued Pargeter for breach of an oral joint venture agreement to open a fast food franchise. After entering into the agreement, the parties met with representatives of the franchise, prepared to incorporate a business, and made arrangements for a bank loan; however, Pargeter later informed Klopfenstein by letter that he had decided to sever their relationship. Klopfenstein never responded to this letter, but informed the franchiser and bank by letter that the joint applications were to be withdrawn and that he would compete with Pargeter for the franchise. Klopfenstein made no contemporaneous efforts to protest Pargeter's withdrawal or to enforce their agreement. Moreover, after Pargeter successfully secured the franchise, Klopfenstein took no immediate action, but rather waited almost two years to file suit seeking to enforce the agreement. *Id.* at 151.

The Ninth Circuit found Klopfenstein's letters to the bank and franchisor and his failure to act to enforce the agreement constituted an abandonment of the contract and that no genuine issue of material fact precluded summary judgment. *Id.*

Furthermore, the court agreed with the district court's determination that Klopfenstein's affidavit, submitted in opposition to defendant's motion, in which he stated that he did not intend to abandon or rescind the contract, did not raise a material issue of fact. *Id.* The court reasoned that Klopfenstein's affidavit did not point to any conduct from which his intent at the time could be inferred and thus, in the face of his unequivocal conduct, was immaterial to determining the validity of the joint venture agreement. *Id.* at 151–52. Accordingly, the court found no genuine issue of material fact precluded the district court's ruling that the parties had abandoned the agreement. *Id.; see also Metropolitan Pilots Assoc., L.L.C. v. Schlosberg*, 151 F.Supp.2d 511, 525–26 (D.N.J.2001) (applying New York law and finding that third-party plaintiff's conduct established abandonment of parties' contract as a matter of law).

Here, Hirschfeld's failure to wire the money to the trust account, Jones' representation to President Clinton that the money from Hirschfeld was "no longer on the table" and that there would be "no payment from Mr. Hirschfeld as part of the settlement with [President Clinton]," coupled with her statement in the Stipulation of Settlement that "the consideration recited herein [i.e. the $850,000 from President Clinton] is the sole consideration for the parties' agreement to this Stipulation" are unambiguous evidence of an abandonment of the October 31 agreement, fully inconsistent with the intent to be bound thereby. Furthermore, there is no evidence on the record of any contrary manifestations of intent to be bound by the agreement by either party subsequent to October 31, 1998. In particular, there is no evidence that Jones made any statements or took any action contemporaneous to the McMillan letter and the Stipulation of Settlement from which a rational fact

finder could conclude that she did not intend to abandon the agreement.

The sole support for finding a genuine issue of fact in this regard comes from Jones' affidavit, sworn to in August of 2002 and submitted with her prior motion for summary judgment, in which she states, "I never expressed or indicated in any manner that I no longer wanted the payment owed to me by defendant." (Aff. of Paula Jones, sworn to on August 2, 2002, ¶ 9.). This statement is insufficient to prevent summary judgment for two reasons: First, in stating that she never expressed that she didn't *want* Hirschfeld's money, plaintiff carefully avoids the crucial issue raised by the McMillan letter and Stipulation of Settlement in which she represented that she would not *take* Hirschfelds' money. Second, plaintiff's statements of her intentions, made almost four years after the fact during the course of litigation, are insufficient to create a genuine issue of material fact in light of her previous unequivocal manifestations of intent to abandon the October 31 agreement. *See Klopfenstein*, 597 F.2d at 152 ("Undisclosed, subjective intentions are immaterial in this commercial transaction, especially when contradicted by objective conduct."); Cala-

mari and Perillo on Contracts, § 2.2 (5th ed.2003); N.Y. Jur.2d, Contracts, § 30 ("In determining the parties' intent, an objective test is generally applied. The manifestation of the parties' intention rather than the actual or real intention is ordinarily controlling."). As a result, the Court finds that Jones abandoned her agreement with Hirschfeld such that she cannot now maintain an action to enforce its terms.[8] Accordingly, defendant is entitled to summary judgment dismissing the Complaint against him in its entirety.

### 3. Defendant's Renewed Motion for a Jury Trial

██ Finally, defendant moves the Court, again, to grant a jury trial in this case. Although this decision disposes of plaintiff's claim, the issue is not moot because defendant's counterclaim remains, at least for now, before the Court. In its June 2003 Opinion and Order, the Court thoroughly explained that defendant waived his right to a jury in this case and that there were no grounds for relieving him of that waiver. *Jones v. Hirschfeld*, 2003 WL 21415323 at *5–6. Defendant has offered no new arguments in his cur-

---

8. Furthermore, inasmuch as plaintiff has argued that the parties' agreement should be construed purely as a unilateral contract, under which Hirschfeld offered to pay Jones one million dollars in consideration for her performance, that is, settling and discontinuing her lawsuit against President Clinton, Jones' conduct evidences a rejection of Hirschfeld's offer prior to acceptance. Acceptance of a unilateral offer is accomplished by performance. Calamari and Perillo on Contracts, § 2.10. Where the offeree rejects an offer, including a unilateral offer, prior to acceptance, the offer is terminated and cannot thereafter be accepted by performance. *See Int'l Union, United Mine Workers of Am., v. Big Horn Coal Co.*, 916 F.2d 1499, 1502 (10th Cir.1990); *Greystone P'ships Group, Inc. v. Koninklijke Luchtvaart Maatschappij, N.V.*, 815 F.Supp. 745, 753 (S.D.N.Y.1993). "Any

words or acts of the offeree indicating that he declines the offer, or which justify the offeror in inferring that the offeree intends not to accept the offer or give it further consideration, amounts to a rejection." N.Y. Jur.2d, Contracts, § 43. Although the determination of whether a party's conduct constitutes a rejection presents a question of fact, *Vestron, Inc. v. ITC Productions, Inc.*, 193 A.D.2d 490, 493, 597 N.Y.S.2d 382, 385 (1st Dep't.1993); 27 Am.Jur. Proof of Facts 2d 605 (2004), Jone's unambiguous conduct, publicly reported in the press, clearly manifests an intention to reject Hirschfeld's money and justified Hirschfeld in inferring that Jones no longer intended to accept his offer. For the reasons discussed in the body of this opinion, the Court finds that there is no genuine issue of material fact in this regard.

rent motion that were not addressed in the Court's prior decision. Accordingly, defendant's motion represents an untimely attempt to reargue the previous motion and is denied.

### 4. Sanctions

In her responses to the three foregoing motions, plaintiff has requested that the Court sanction defendant for bringing frivolous motions. With respect to defendant's motion for recusal and summary judgment, plaintiff requests sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. Clearly, defendant's motion for summary judgment, although poorly constructed, is not frivolous—to the contrary, it is meritorious. Defendant's motion for recusal, although unsuccessful, also fails to warrant sanctions. Although the judicial guidance and comment received by defendant's counsel at the January 20 conference was deserved, the ensuing motion for recusal was not the type rising to the level of frivolity or impropriety for which sanctions are appropriate. Furthermore, plaintiff has failed to file a separate motion for sanctions as required by Rule 11. *See* Fed. R.Civ.P. 11(c)(1)(A) ("A motion made for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate [the Rule.]"); *Rates Technology, Inc. v. UTT Corp.*, 94 CIV. 0326(PKL), 1995 WL 16788 (S.D.N.Y. Jan. 18, 1995). Accordingly, no sanctions will be awarded with respect to these motions.

With respect to defendant's motion for a jury trial, plaintiff requests sanctions pursuant to Rule 11 as well as 28 U.S.C. § 1927. Again, plaintiff's Rule 11 request, made as part of her opposition to defendant's motion, is procedurally deficient. Section 1927 of Title 28, United States Code, however, provides additional authority to the Court to sanction an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Furthermore, the Court has the "inherent power" to impose sanctions against parties or their counsel who have litigated in bad faith or who have willfully abused the litigation process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir.2000). "Thus, '[t]o impose sanctions under either authority, the trial court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes.'" *Revson*, 221 F.3d at 79 (quoting *Agee v. Paramount Communications Inc.*, 114 F.3d 395, 398 (2d Cir.1997)).

As noted above, the arguments raised by defendant in his motion for a jury trial had already been addressed thoroughly by the Court in a previous decision. The arguments therein do not present the Court with any close issues, but rather are completely without merit. Under the circumstances, the Court finds that it was filed purely to burden plaintiff's counsel with additional work while he endeavored to respond to the previous motions filed by defendant and to delay the proceedings. Furthermore, the Court previously made clear to both defendant and his attorney that sanctions would be imposed for frivolous motion practice. Therefore, the Court awards plaintiff the reasonable attorney's fees and cost associated with her response to this motion. This sanction will be imposed jointly and severally against the defendant and his attorney.

### CONCLUSION

For the foregoing reasons, defendant's motion for RECUSAL is DENIED, defendant's motion for SUMMARY JUDG-

MENT is GRANTED, and defendant's motion for a JURY TRIAL is DENIED. The parties are directed to appear before the Court on October 7, 2004 at 11:30 a.m. At this conference the parties should be prepared to discuss proposal's for disposing of the defendant's counterclaim, which remains outstanding in this action. Finally, plaintiff's counsel is directed to file an affidavit detailing the fees and costs associated with plaintiff's response to defendant's most recent motion for a jury trial by September 24, 2004; defendant's written objections, if any, are to be filed by October 1, 2004.

**SO ORDERED.**